JN:EEA
F. #2018R00333

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- against -<br><br>ARTEM ASHIROV,<br>    also known as "Ari Ashirov,"<br><br>                  Defendant. | S U P E R S E D I N G<br>I N F O R M A T I O N<br><br>Cr. No. <u>18-321 (S-1) (WFK)</u><br>(T. 18, U.S.C., §§ 982(a)(7), 982(b)(1),<br>1347, 2 and 3551 <u>et seq.</u>; T. 21, U.S.C.,<br>§ 853(p); T. 42, U.S.C., § 1320a-<br>7b(b)(2)) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE UNITED STATES ATTORNEY CHARGES:

INTRODUCTION

At all times relevant to this Superseding Information, unless otherwise indicated:

I.     <u>The Defendant and Relevant Entities</u>

        1.     The defendant ARTEM ASHIROV, also known as "Ari Ashirov," was a licensed pharmacist in New York State.

        2.     ABO Pharmacy Corp. ("ABO Pharmacy") was a New York State corporation located at 8003 Flatlands Avenue, Brooklyn, New York. ABO Pharmacy operated as a pharmacy and was open to the public. The defendant ARTEM ASHIROV was the owner and sole proprietor of ABO Pharmacy.

        3.     ABO Pharmacy maintained a bank account at, among others, Bank-1, an entity the identity of which is known to the United States Attorney, with a bank account number ending in 7530 (the "ABO Pharmacy Account").



4.      ABO Pharmacy was enrolled as an authorized provider in the Medicare Program ("Medicare") and the Medicaid Program ("Medicaid"), and was authorized to bill Medicare and Medicaid for drugs dispensed to their respective beneficiaries. ABO Pharmacy also billed private insurers for drugs dispensed to those insurers' beneficiaries. ABO Pharmacy obtained the drugs it dispensed from various drug wholesalers. Medicare and Medicaid reimbursements were sent to the ABO Pharmacy Account by Pharmacy Benefit Managers ("PBMs"), managed care organizations or directly from the New York State Department of Health ("New York DOH").

II.     Background

   A.   The Medicare Program

5.      Medicare was a federal health care program providing benefits to persons who were at least 65 years old or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

6.      Medicare was subdivided into multiple parts. Prescription drug coverage was provided through the Medicare Part D program, which covered the costs of most prescription drugs for Medicare beneficiaries. Medicare Part D was enacted as part of the Medicare Prescription Drug, Improvement and Modernization Act of 2003.

7.      CMS assigned pharmacies a National Provider Identification ("NPI") number. A pharmacy dispensing medications used its assigned NPI number when submitting a claim for reimbursement under Medicare Part D. A pharmacy was permitted to

submit claims for reimbursement under Part D only for those medications actually dispensed and was required to maintain records verifying that it dispensed the medications.

8. Medicare Part D was administered by private insurance plans that were reimbursed by Medicare through CMS. Medicare Part D subsidized the costs of prescription drugs by prospectively paying private insurers monthly payments to provide Medicare-covered benefits to Medicare beneficiaries.

9. Medicare beneficiaries obtained Part D benefits in two ways: (a) by joining a Prescription Drug Plan, which covered only prescription drugs; or (b) by joining a Medicare Advantage Plan, which covered both prescription drugs and medical services (collectively, "Part D Plans"). Part D Plans were operated by private companies approved by Medicare and were often referred to as drug plan "sponsors."

10. A pharmacy could participate in Medicare Part D through a Part D Plan or through one or more PBMs. A PBM acted on behalf of one or more Part D Plans. Through a Part D Plan's PBM, a pharmacy could join a Part D Plan network. After a Medicare Part D beneficiary presented a prescription to a pharmacy and the pharmacy dispensed the medication, the pharmacy would submit a reimbursement claim either directly to the Part D Plan or to a PBM that represented the beneficiary's Part D Plan. The Part D Plan or the PBM determined whether the pharmacy was entitled to payment for each claim and periodically paid the pharmacy for any outstanding claims. The Part D Plan's sponsor reimbursed the PBM for its payments to the pharmacy.

11. Typically, a Medicare beneficiary enrolled in a Part D Plan obtained his or her prescription medications from a pharmacy authorized by the beneficiary's Part D Plan. After filling a beneficiary's prescription, the pharmacy submitted the prescription drug claim

to a Part D Plan or to a PBM for payment under the beneficiary's Medicare Part D Plan identification number as well as the pharmacy NPI number. Then, the Part D Plan or PBM sent the reimbursement to the pharmacy, either by check or by electronic transfer of funds.

12. Each Part D Plan submitted to CMS a record of each prescription drug claim it received from a pharmacy. This record was commonly referred to as a prescription Drug Event ("PDE"). All PDE records accepted by CMS were stored in CMS's Integrated Data Repository for use in calculating expected Part D costs for the following year.

13. Under Title 42, Part 423 of the Code of Federal Regulations, Part D plans were required to ensure that pharmacies that submitted prescription drug claims for reimbursement under Part D were contractually required to maintain records for ten years.

14. Medicare and Part D Plan sponsors were "health care benefit programs" as defined by Title 18, United States Code, Section 24(b).

B. The Medicaid Program

15. Medicaid was a health and long-term care coverage program jointly financed by states and the federal government pursuant to the Social Security Act of 1965. Each state established and administered its own Medicaid program and determined the type, amount, duration and scope of services covered within broad federal guidelines.

16. New York State's Medicaid program ("New York State Medicaid") was administered by the New York DOH. The New York State Medicaid Pharmacy Program covered medically necessary prescription and non-prescription drugs that were approved by the United States Food and Drug Administration for Medicaid fee-for-service enrollees. New York State's Medicaid Management Information System, also called

eMedNY, was a computerized system for claims processing which provided information upon which management decisions could be made.

17. The New York DOH contracted with Computer Sciences Corporation ("CSC") to be the Medicaid fiscal agent. CSC, in its role as fiscal agent, maintained a Medicaid claims processing system to meet Medicaid requirements in New York State.

18. Pharmacies enrolled in Medicaid used their NPI number for billing purposes. Medicaid required providers to bill all applicable insurance sources before submitting claims to Medicaid, and required payment from those sources to be received before submitting a Medicaid claim.

19. Medicaid beneficiaries were able to obtain pharmacy benefits either through a Fee for Service ("FFS") plan or a Medicaid Managed Care ("MMC") plan.

20. Medicaid beneficiaries enrolled in FFS plans obtained their prescription medications from licensed pharmacies. After dispensing an enrollee's prescription, the pharmacy submitted the prescription drug claim to CSC for payment under the enrollee's identification number. CSC then sent a reimbursement check to the pharmacy or initiated an electronic transfer of funds to the pharmacy's bank account.

21. Medicaid beneficiaries enrolled in MMC plans obtained their prescription medications from pharmacies authorized by the beneficiaries' MMC plans. After dispensing the enrollee's prescription, the pharmacy submitted the prescription drug claim to the MMC plan for payment under the enrollee's MMC number and/or Medicaid identification number. The MMC plan then sent a reimbursement check to the pharmacy or initiated an electronic transfer of funds to the pharmacy's bank account.

22. The maintenance and furnishing of information relative to care included on a Medicaid or MMC claim was a basic condition for participation in the New York State Medicaid Pharmacy Program. For auditing purposes, it was required that enrollees' records be maintained and available to authorized Medicaid officials for six years following the date of payment of a claim.

23. Medicaid was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

III. The Fraudulent Schemes

A. The Kickback Scheme

24. In or about November 2017, the defendant ARTEM ASHIROV informed Physician-1, an individual whose identity is known to the United States Attorney, that ASHIROV wanted to "do business" with Physician-1.

25. Shortly thereafter, the defendant ARTEM ASHIROV left a packet for Physician-1 at Physician-1's office in Brooklyn, New York, containing $500 in cash and advertising materials pertaining to ABO Pharmacy.

26. On or about December 20, 2017, the defendant ARTEM ASHIROV met Physician-1 at Physician-1's office. At this meeting, ASHIROV gave Physician-1 a bottle of whiskey, two whiskey glasses and one cologne set. ASHIROV also proposed an arrangement whereby Physician-1 would refer patients to ABO Pharmacy and, in return, ASHIROV would pay Physician-1 $1,000 per month plus a percentage of the reimbursement ABO Pharmacy received from health care programs for any of the patients' prescriptions.

27. On or about January 10, 2018, the defendant ARTEM ASHIROV met Physician-1 at Physician-1's office. At this meeting, ASHIROV and Physician-1 discussed

specifics of the kickback arrangement ASHIROV sought, including the electronic transmission of patients' prescriptions to ABO Pharmacy; the amount of the monthly flat fee ASHIROV was willing to pay Physician-1 for patient referrals to ABO Pharmacy; and that ASHIROV would provide a percentage of health care claim reimbursements to Physician-1 for each patient Physician-1 referred to ABO Pharmacy.

28. On or about February 12, 2018, Physician-1 generated prescriptions for two undercover sources ("UC-1" and "UC-2"), individuals whose identities are known to the United States Attorney, posing as Medicaid beneficiaries. Physician-1 electronically sent these prescriptions to ABO Pharmacy. UC-1 and UC-2 picked up their prescription medications at ABO Pharmacy shortly thereafter.

29. On or about February 22, 2018, the defendant ARTEM ASHIROV met Physician-1 at Physician-1's office. At this meeting, ASHIROV gave Physician-1 an envelope containing $2,000 in cash and requested that Physician-1 write additional prescriptions for patients referred to ABO Pharmacy to generate increased billing for ABO Pharmacy.

30. On or about March 14, 2018, when UC-2 came to ABO Pharmacy to pick up a refill for the medication that Physician-1 had prescribed, the defendant ARTEM ASHIROV offered to provide UC-2 store credit in return for UC-2's referral of other patients to ABO Pharmacy.

31. As reimbursement for the medications Physician-1 prescribed and UC-1 and UC-2 filled at ABO Pharmacy, Medicaid paid ABO Pharmacy approximately $5,886.

B.    The Health Care Fraud Scheme

32. In or about and between January 2017 and May 2018, the defendant ARTEM ASHIROV failed to purchase sufficient levels of pharmaceutical products from wholesale distributors to meet the purported demand at ABO Pharmacy. As part of the scheme, ASHIROV billed health insurance plans, including Medicare and Medicaid, in excess of approximately $1.74 million for certain pharmaceutical products purportedly dispensed by ABO Pharmacy, which were in fact never purchased by ABO Pharmacy.

33. The defendant ARTEM ASHIROV deposited the unlawful proceeds from the scheme into the ABO Bank Account.

## COUNT ONE
(Health Care Kickbacks)

34. The allegations contained in paragraphs one through 33 are realleged and incorporated as if fully set forth in this paragraph.

35. In or about and between November 2017 and March 14, 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ARTEM ASHIROV did knowingly and willfully offer and pay kickbacks, directly and indirectly, overtly and covertly, to one or more persons to induce such persons to refer one or more Medicare and Medicaid beneficiaries to ASHIROV for the furnishing of and arranging for the furnishing of items and services for which payment may be made in whole and in part under Medicare and Medicaid.

(Title 42, United States Code, Section 1320a-7b(b)(2); Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNT TWO
(Health Care Fraud)

36. The allegations contained in paragraphs one through 33 are realleged and incorporated as if fully set forth in this paragraph.

37. In or about and between January 2017 and May 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ARTEM ASHIROV, together with others, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud Medicare and Medicaid, both health care benefit programs, and to obtain, by means of one or more materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, Medicare and Medicaid, in connection with the delivery of and payment for health care benefits, items and services.

(Title 18, United States Code, Sections 1347, 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

38. The United States hereby gives notice to the defendant that, upon his conviction of either of the offenses charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of a federal health care offense to forfeit property, real or personal, that constitutes, or is derived directly or indirectly from, gross proceeds traceable to the commission of such offense, including, but not limited to: (a) the sum of approximately five hundred dollars and zero cents ($500.00) in United States currency seized from the defendant in or about November 2017; (b) the sum of approximately two thousand dollars and zero cents ($2,000.00) in United States currency seized from the defendant on or about February 22, 2018; and (c) the sum of approximately one million seven hundred forty-one thousand nine

10

hundred sixty-nine dollars and thirty-two cents ($1,741,969.32) in United States currency that the defendant received from Medicare and Medicaid as a result of the defendant's fraudulent conduct as charged in Count Two.

39.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any

other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(7) and 982(b)(1); Title 21, United States Code, Section 853(p))

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: _____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. O.136

F.#: 2018R00333

FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

vs.

ARTEM ASHIROV,
also known as "Ari Ashirov,"

Defendant.

# SUPERSEDING INFORMATION

(T. 18, U.S.C., §§ 982(a)(7), 982(b)(1), 1347, 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 42, U.S.C., § 1320a-7b(b)(2))

*A true bill.*

_____
*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

*Clerk*

*Bail, $* _____

*Erin E. Argo, Assistant U.S. Attorney (718) 254-6049*